FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA FEB -9
## NORTHWESTERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

PM 1: 44

|  |  |  |
|---|---|---|
| **MARY BORDEN** | ) | |
| **and** | ) | |
| **BETTY KOGER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CV- 00-B-1850-NW** |
| | ) | |
| **LABORERS' INTERNATIONAL UNION** | ) | |
| **OF NORTH AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**ENTERED**

FEB - 2001

## MEMORANDUM OPINION

Currently before the court are the Motions for Summary Judgment filed by defendant

Laborers' International Union of North America ("defendant" or "the International Union").[1]

Mary Borden ("Borden") and Betty Koger ("Koger") filed this action alleging that the

International Union breached its duty of fair representation, when the trade union in which

plaintiffs hold membership, Laborers' Local 366, Sheffield, Alabama ("the Local"), suspended

the handling of their discharge grievances in 1995. (Complaint ("Compl.") at ¶ 4.) Defendant

---

[1] Defendant filed a motion for summary judgment on August 17, 2000. Unaware that defendant had previously submitted a brief in support of its motion for summary judgment, the court entered an order on September 1, 2000, directing defendant to file its brief by September 22, 2000. Pursuant to the court's order the International Union submitted a second supporting brief on September 22, 2000. On September 22, 2000, the International Union also filed a second motion for summary judgment. The court has considered the original memorandum submitted by defendant, filed on September 22, 2000, as well as the grounds for summary judgment asserted in the second Motion for Summary Judgment.

/8

asserts that plaintiffs' lawsuit is barred by the applicable statute of limitations. (Mem. in Support of Defendant's Motion for Summary Judgment (Def.'s Brief") at 5.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion is due to be granted.

## I. FACTUAL SUMMARY

Plaintiffs' complaint asserts a cause of action allegedly cognizable under section 101(a)(5) of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(5). (Compl. at ¶ 2.) The International Union has moved for summary judgment. In support of its motions for summary judgment defendant submitted an affidavit of the International Union's General Secretary-Treasurer, which included the verbatim transcript and file materials of the union's internal proceedings. (Affidavit of Carl Booker at 1.) Plaintiffs filed a brief in opposition with supporting affidavits from each plaintiff.

As prologue to the employment termination/duty of representation issues central to this litigation, in 1994, plaintiffs, who were and remain employed by the Tennessee Valley Authority ("TVA") as annual employee laborers, filed a complaint against TVA with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment. (DX E[2], Laborers' District Council of Alabama Hearing Before Trial Board

---

[2] Defendant submitted the affidavit of Carl Booker, General Secretary-Treasurer of the International Union, on August 24, 2000, attaching numerous exhibits. Those exhibits are referred to by "DX" and the corresponding lettered tab.

2

Members at 8, 23.)

A year later, on July 13, 1995, plaintiffs were terminated by TVA for unspecified "lewd and vulgar" behavior. (DX E at 12.) On the same day plaintiffs filed grievances under their collective bargaining agreement alleging that their terminations were in retaliation for their previous EEOC claims. (DX E at 12.)

TVA denied the grievances on the contractual ground that it was not required to respond to a grievance where the issue was simultaneously "filed under a separate procedure provided by law or federal regulation," as provided in Section B-VIII.A.3 of the labor agreement. (DX I, Collective Bargaining Agreement at 57.) This determination was conveyed to plaintiffs by the TVA Facility Manager in identically worded grievance responses on August 14, 1995: "As explained to you during the face-to-face hearing, you failed to identify on your grievance form what part of the General Agreement had been violated but listed EEO related issues instead. Therefore, your grievance is considered to be non-grievable and is denied." TVA confirmed this position by letter from Donna M. Bruno, TVA's Labor Relations Manager to plaintiffs on September 29, 1995. (DX J, Donna M. Bruno Letter of September 29, 1995.) Bruno also sent Local 366 Business Manager Melvin Burns a copy of this letter. (*Id.*)

Laborers' Local 366 concluded that TVA was within its contractual rights in refusing to consider both the EEOC complaint and a contract grievance simultaneously and advised plaintiffs of this decision. Plaintiffs then choose to proceed with their EEOC

3

rights, rather than any grievance or contract rights they may have possessed.  In June

1996, plaintiffs amended their EEOC complaint to add an allegation of wrongful

termination.  That matter was eventually settled, and both plaintiffs returned to work in

June 1998.

In the Spring of 1999, more than three years after the grievances had been

determined by Local 366 to be without merit, plaintiffs challenged that determination by

bringing internal union disciplinary charges against Local 366 Business Manager Burns.

Pursuant to the union's internal procedures, the matter was referred to an intermediate

body, the Laborers' District Council of Alabama, for hearing, which was conducted on

April 22, 1999.  (DX E.)  The District Council concluded that the charges had not been

proven by plaintiffs and held that neither Business Manager Burns nor Local 366 was in

violation of the union's Uniform Local Union Constitution.  (DX F at unnumbered 4-5.)

The union's internal process permits an appeal to the union's Appellate Officer, who

serves as an independent tribunal, though appointed by the union.  In this case, the

Appellate Officer affirmed the decision of the Alabama District Council on January 31,

2000.  (DX H.)

This lawsuit was filed on July 3, 2000, nearly five years after Local 366 informed

plaintiffs that it had determined that their grievances were without merit and would not be

further processed.  (Compl.)  The suit is filed against the International Union, but not

against Local 366 or the Alabama District Council.  (Compl.)  Plaintiffs allege both that

4

they were unfairly represented in the handling of their original 1995 contract grievance
and that The International Union improperly handled internal disciplinary charges in
order to protect Local 366 and Business Manager Melvin Burns. (Compl. at ¶ 4, 12.)

## II. SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings,
depositions, answers to interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law." *Celotex v. Catrett*, 477 U.S.
317, 322 (1986). The movant can meet this burden by presenting evidence showing there
is no dispute of material fact, or by showing that the nonmoving party has failed to
present evidence in support of some element of his case on which he bears the ultimate
burden of proof. *Celotex*, 477 U.S. at 322-23; *see* Fed. R. Civ. P. 56(a) and (b). Once the
moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond
the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories,
and admissions on file,'designate 'specific facts showing that there is a genuine issue for
trial,'" *Celotex,* 477 U.S. at 324.

"Mere general allegations which do not reveal detailed and precise facts will not
prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43
F.3d 587, 592 (11th Cir. 1995) (citation omitted) (en banc), cert. denied, 516 U.S. 817
(1995). If the evidence is merely colorable, or is not significantly probative, summary

5

judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. Discussion

## A.    Section 101(a)(5) of the Labor-Management Reporting and Disclosure Act.

Plaintiffs bring this action under section 101(a)(5) of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §411(a)(5), which provides in relevant part, that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined . . . ."[3] (*See* Compl. at ¶ 2.) However, plaintiffs'

---

[3] The LMRDA defines a "labor organization" as an organization which exists for the purpose of "dealing with employers." LMRDA § 3(i), 29 U.S.C. § 402(i). TVA is not an

6

complaint fails to assert a violation of this statutory command.  Plaintiffs do not allege that they were "fined, suspended, expelled, or otherwise disciplined" at all.[4]  Specifically, they do not allege any such disciplinary action by defendant.

With respect to the International Union, the complaint contains only limited allegations.  In 1999, plaintiffs filed a complaint with their local union against their Business Manager, Melvin Burns.  (Compl. ¶ 9.)  Plaintiffs thereafter appealed the adverse local union decision to their District Council.  (Compl. ¶ 9; *see* DX F.)  The International Union had no role until plaintiffs appealed the District Council decision to the International Union's Appellate Officer.  (Compl. ¶ 11; *see* DX G.)

Plaintiffs do not allege that, in the terms of LMRDA § 101(a)(5), defendant imposed or affirmed any fine against them, that it suspended them, that it expelled them, or that it otherwise imposed or affirmed any discipline against them whatsoever. Plaintiffs complain instead that the International Union failed to find merit in their

_____

"employer" because the statutory definition excludes "the United States or any corporation wholly owned by the Government of the United States."  LMRDA § 3(e), 29 U.S.C. § 402(e). Nonetheless, an organization qualifies as a "labor organization" (and there is consequent LMRDA coverage) if the organization deals with any employer, without regard to whether the complaining employees are employed by the statutory employer.  *Wildberger v. American Federation of Gov't Employees,* 86 F.3d 1188, 192 (D.C. Cir. 1986); *Hester v. Operating Eng'rs,* 818 F.2d 1537, 1541 (11th Cir. 1986).  Even though the representation of TVA employees, standing alone, fails to satisfy the statutory prerequisite, the International Union makes no claim that it is not a statutorily covered "labor organization."

[4] Plaintiff's Brief and Evidence In Opposition to Defendant's Motion for Summary Judgment does not address defendant's argument that plaintiffs have failed to allege a violation of their rights under LMRDA § 101(a)(5), 29 U.S.C. 411(a)(5).

disciplinary charges against Local Union Business Manager Burns. (Compl. at ¶¶ 13, 14.) They also complain that they were not accorded procedural rights in the internal union process. (Compl. at ¶¶ 4, 5, 12, 14.)

LMRDA § 101(a)(5) does no more than protect plaintiffs, as union members, from unjust discipline; it does not create a federal right whereby they may seek to impose discipline against others. Because the complaint fails to allege that plaintiffs have been disciplined by the International Union, the court is of the opinion that the portion of the complaint alleging a violation of rights under LMRDA § 101(a)(5), 29 U.S.C. 411(a)(5), is due to be dismissed.

**B.    The Duty of Representation Claim**

For the reasons set forth below, the complaint is barred by the applicable statute of limitations. Even if plaintiffs' complaint was not barred by the statute of limitations, plaintiffs have failed to put forth sufficient evidence on which a reasonable jury could find in their favor on the merits.

Plaintiffs' claim for breach of the duty of fair representation does not rest upon the National Labor Relations Act ("NLRA") section 301 jurisdictional basis. *Breininger v. Sheet Metal Local 6*, 493 U.S. 67, 84 (1989). The TVA, as a federal corporation, is specifically exempted from the NLRA, and the parallel labor relations provisions for federal employers under the Federal Labor Relations Act. *International Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Authority*, 108 F.3d 658, 663 (6th

8

Cir. 1997) (citing 29 U.S.C. § 152(2); 29 U.S.C. § 142(3); 5 U.S.C. § 7103 (a)(3)(E)).

The TVA's authority to enter into collective bargaining agreements is derived instead

from § 3 of the TVA Act, 16 U.S.C. § 831b, which broadly empowers the TVA to

"provide a system of organization to fix responsibility and promote efficiency" among its

personnel. *See id*. Nonetheless,

> neither TVA nor the unions contest the district court's conclusion that the
> unions are subject to a duty of fair representation. This is so because TVA's
> authority to bargain collectively with the unions as the exclusive
> representatives of employees in Bowman's classification derives from
> provisions of the TVA Act which broadly empower TVA to design its own
> system of personnel management.  Since the duty of fair representation
> arises by implication as a necessary corollary to the right of exclusive
> representation, the unions are subject to the same obligation toward
> non-union members of the employee unit as if they were bargaining under
> the Railway Labor Act or the National Labor Relations Act.

*Id*. at 663-64 (citing *Bowman v. Tennessee Valley Auth.*, 744 F.2d 1207 (6th Cir.1984),

cert. denied, 470 U.S. 1084 (1985)).

    While the Eleventh Circuit has not yet squarely held that the TVA Act creates a

duty of fair representation, *Hester v. Operating Engineers*, 830 F.2d 172, 174 (11th Cir.

1987), vacated, 488 U.S. 1025 (1989), it has adopted the closely related holding that the

principles of the LMRA apply to an action against a TVA union for breach of a collective

bargaining agreement. *See Hester v. Operating Eng'rs*, 941 F.2d 1574, 1580 (11th Cir.

1991), *accord*, *Machinists v. Tennessee Valley Authority*, 108 F.3d 658 (6th Cir. 1987).

9

Plaintiffs have not disputed the applicability of the NLRA § 10(b) limitations period.[5] *See* 29 U.S.C. § 160(b). The court concludes that the six-month § 10(b) limitations period applies to plaintiff's claim of breach of the duty of fair representation by the union. *See Tennessee Valley &Trades Labor Council v. Tennessee Valley Authority*, 751 F. Supp. 135, 138 (M.D. Tenn. 1990) (citing *DelCostello v. Teamsters,* 462 U.S. 151 (1983)); *accord*, *McNabb v. Tennessee Valley Authority*, 754 F. Supp.118, 121-22 (E.D. Tenn. 1990) (plaintiff's claim was barred because it was not filed within the six months' limitation period).

The limitations period begins to run when plaintiffs "knew or should have known of the Union's 'final action,' i.e., the point where the grievance procedure was exhausted or otherwise broken down," *Hester v. Operating Eng'rs,* 878 F.2d 1309, 1310 (11th Cir. 1989), or "when the Union [took] an unequivocal position that it will not seek arbitration," *McCreedy v. Local 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987). *See also*, *Howard v. Lockheed-Georgia Co.*, 742 F.2d 612, 614 (11th Cir. 1984) (section "10(b)'s six month limitations period starts running when the claimant 'discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]'").

---

[5] Plaintiff's Brief and Evidence in Opposition to Defendant's Motion for Summary Judgment does not address defendant's statute of limitations argument.

10

On September 29, 1995, or shortly thereafter, TVA notified plaintiffs of its determination that plaintiffs' grievances were barred by the collective bargaining agreement.  (DX J.)  Plaintiffs were then told by Burns that Local 366 agreed with the TVA determination and would not process their grievances further.  (DX E at 22.)  There is no claim by plaintiffs that they were lulled into believing Local 366 was continuing to process their grievances.

Thus, the limitations period expired in March or April of 1996, and this duty of representation action had been barred for several years when it was filed on July 3, 2000.  (*See* Compl.)  Without any clear claim that the statute of limitations should be excused or tolled, plaintiffs implicitly ask for relief from the statute for any of several reasons -- that they relied upon the advice of their former counsel, (Pl.'s Brief at ¶ 9), that the union had a duty to inform them of the applicable limitations period, (Pl.'s Brief at ¶ 13), and that the statute was tolled by the pendency of their internal union disciplinary charges.  None of these arguments is availing.  Plaintiffs cite no authority for the proposition that a limitations period is excused by reliance upon the advice of counsel or that a labor organization is obligated to provide notice of a limitations period.  As for the internal disciplinary charges, this action had long been barred even in the spring of 1999, when plaintiffs filed their internal Union charges against Burns.

The duty of fair representation allegation fails as well because the necessary

11

elements of the cause have not been supported by affidavit or other evidence sufficient to withstand defendant's motion for summary judgment. A union breaches its duty of fair representation only when its conduct toward a member of the collective bargaining unit is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Considerable discretion is vested in the union, both in its dealings with management and its dealings with individual union members. *See generally Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65 (1991). Among other matters, a union may, fully consonant with its duty of fair representation, abandon a grievance so long as it does so upon a good faith determination that the grievance lacks merit. *See Vaca,* 386 U.S. at 190, 191 ("a union may not arbitrarily ignore a meritorious grievance"); *Landry v. The Cooper/T. Smith Stevedoring Co., Inc.,* 880 F.2d 846, 852 (5th Cir. 1989) (a grievance must be pursued "unless [the union] decide[s] in good faith that the grievance lack[s] merit").

Here, Local 366 discontinued its handling of plaintiffs' grievances when TVA asserted its right under the collective bargaining agreement not to respond in the grievance and arbitration process to a matter simultaneously "filed under a separate procedure provided by law or federal regulation." (DX J; DX I at 57.) It may be that plaintiffs disagree with the Local Union's decision. They may believe it to be a mistaken reading of the contract. However, the duty of representation is not breached merely by mistake. *Ruzicka v. General Motors*, 649 F.2d 1207, 1212 (6th Cir. 1981), *cert. denied*, 464 U.S. 982 (1983) (ordinary negligence in the handling of a grievance does not breach

12

the duty of fair representation). It takes something more; conduct which is in the

talismanic phrase "arbitrary, discriminatory, or in bad faith." *Vaca,* 386 U.S. at 190.

There is no evidence before the court on which a reasonable jury could find the Local

Union's decision to be based on discriminatory intent. Local 366's conclusion that TVA

was within its contract rights in refusing to proceed with the 1995 grievance in light of

plaintiffs' pending 1994 EEOC charge is not evidence of bad faith.

Moreover, the International Union, as a parent labor organization, is legally

obligated to answer only for its own conduct, not that of its subordinate bodies. As stated

in *Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, 217-18 (1979):

> Petitioner makes the distinct argument that we should hold the International
> liable for its own failure to respond to the locals' strike. In the face of
> Congress' clear statement of the limits of an international union's legal
> responsibility for the acts of one of its local unions, it would be anomalous
> to hold that an international is nonetheless liable for its failure to take
> certain steps in response to actions of the local. Such a rule would pierce
> the shield that Congress took such care to construct.

Thus, plaintiffs' contention that the defendant is liable for the misconduct or breach the

duty of fair representation, if any, of its affiliated Local 366 is mistaken.

Because the duty of representation cause was long time barred when filed, because

plaintiffs have not alleged essential elements of such a cause, and because defendant is

not answerable for the conduct of its local affiliate, summary judgment is due to be

granted.

13

## IV. CONCLUSION

The court concludes that defendant's Motions for Summary Judgment are due to be granted. All claims against defendant are due to be dismissed with prejudice. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 9th day of February, 2001.

SHARON LOVELACE BLACKBURN
United States District Judge

14